IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LORENZO ANDERSON,** | ) |
| Plaintiff, | ) Case No. 04 C 7049 |
| v. | ) Magistrate Judge |
| | ) Martin C. Ashman |
| **JO ANNE B. BARNHART,** | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff, Lorenzo Anderson, seeks judicial review of the final decision of Defendant, Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner's Administrative Law Judge ("ALJ") found Anderson capable of sedentary work and therefore not disabled under the Social Security Act. Before this Court is Anderson's motion for summary judgment, which requests this Court to reverse the ALJ's decision and find Anderson disabled or remand the case for further determination of Anderson's disability. The Commissioner's motion for summary judgment, which requests this Court to affirm the ALJ's decision, is also before the Court. For the reasons that follow, the Court grants Anderson's motion and remands this case for further determination of his disability.

# I. Background

## A. Procedural History

Anderson filed applications for SSI and DIB on November 1, 2001, alleging onset of disability on September 10, 2001. (R. at 75-77.) Anderson's claim was denied initially and on reconsideration. Following the denial on reconsideration, Anderson requested a hearing before an ALJ. On June 3, 2003, Anderson's requested hearing was held before ALJ Alfred Burton. On September 26, 2003, the ALJ found Anderson not disabled. (R. at 17-22.) Anderson's Request for Review was denied by the Social Security Administration's Appeals Council on September 3, 2004, making the ALJ's decision the final decision of the Commissioner. (R. at 6-8.)

## B. Background Facts

Anderson was born on April 20, 1981, and was twenty-two years old at the time of the ALJ's decision. (R. at 38.) Anderson has a tenth grade education. (R. at 28.) Prior to his alleged disability, Anderson worked "off and on" for a Taco Bell restaurant from May 1998 until 2000.[1] (R. at 32.) Anderson has not worked since claiming disability in September 2001. (R. at 81.)

On September 13, 2001, Anderson was admitted to Mount Sinai Hospital with gunshot wounds to the left hand and both legs. (R. at 117.) Records from Mount Sinai Hospital explain that Anderson's right femur showed gunshot entrance and exit and that his left femur was deformed and showed no gunshot exit. (R. at 136.) Anderson suffered a comminuted fracture of the left femur and underwent open reduction and internal fixation. (R. at 164.) A pin was

---

[1] At his hearing, Anderson testified that he worked until some time in 2000. (R. at 32.) In his Social Security Administration Disability Report, however, Anderson indicated that he was fired in April 2001. (R. at 81.)

inserted and ultimately removed with the insertion of an IM rod in the left femur. (R. at 120.) Debridement and suture procedures were performed on Anderson's left hand. (Id.)

After his initial hospitalization, the record shows that Anderson made at least three visits to Cook County Hospital ("CCH"). On January 2, 2002, Anderson went to CCH complaining of a toothache and pain in his left leg. (R. at 175.) At the end of that visit, Anderson was referred to an oral surgeon and prescribed Tylenol #3 and Motrin for his pain. (R. at 175-76.) Anderson next visited CCH on December 2, 2002, after he fell on a nail and injured his right hand. (R. at 178.) During that visit, Anderson complained about pain in his right hand and also related that he experienced some left thigh pain when the weather changed. (Id.) Anderson returned to CCH with complaints of a toothache and pain in his left upper thigh on May 19, 2003, (R. at 200-03), and was prescribed Motrin and referred to an oral surgeon. (R. at 201.)

### C.     Anderson's Testimony

In an opening statement at the ALJ hearing, Anderson explained that, despite ongoing pain in his left leg, he rarely visited doctors and has virtually no medical record due to his lack of medical insurance and income. (R. at 27.) According to Anderson, he visited clinics to refill medications but never underwent any tests or medical examinations at those facilities. (Id.) Anderson went on to explain that he must frequently elevate his left leg in order to reduce pain and swelling. (Id.) In response to questions from the ALJ, Anderson claimed that doctors recommended that he use a cane when he walks. (R. at 34.) Anderson further testified that he did not believe that he could stand or walk for six hours over the course of an eight hour day.

(R. at 31.) Finally, Anderson stated that his daily activities include taking care of his three children, who were two, three and four years old at the time of the hearing. (Id.)

### D. Medical Expert

William Newman, M.D., provided medical expert testimony at Anderson's hearing. Dr. Newman observed that Anderson had not undergone any medical evaluations since September 18, 2001, and that, in general, there were practically no medical records for Anderson. (R. at 34.) Due to the lack of medical evidence, Dr. Newman agreed with Anderson's attorney's suggestion to postpone the hearing so that Anderson could undergo orthopedic evaluation and X-rays. (R. at 32-35.) Dr. Newman was especially interested in learning more about Anderson's left femur. (R. at 35.)

### E. Vocational Expert

Richard Hemersma, the vocational expert, testified at Anderson's hearing. Mr. Hemersma explained that Anderson's past relevant work experience was limited to a cashier position (with a few other duties) at a Taco Bell restaurant. (R. at 36.) According to Mr. Hemersma, Anderson's job at Taco Bell qualifies as medium exertion, unskilled work. (Id.)

### F. Dr. Elmes' Supplemental Medical Examination

Due to the lack of medical evidence depicting the residuals from the gunshot wounds, the ALJ "postponed" Anderson's hearing, (R. at 37), and requested an orthopedic evaluation from James P. Elmes, M.D., so that the ALJ would be in a "better position to continue and make a

better . . . more informed decision." (Id.) Dr. Elmes performed his evaluation on July 3, 2003. (R. at 186.) X-rays taken at that time revealed a normal appearing left hip with an internal fixation device in the proximal femur. (R. at 187-88.) Physical examination revealed a one-quarter inch leg length discrepancy, a one-quarter inch atrophy of the left thigh, 1+ pain in the left thigh, limitation of range of motion of the right hip to forty degrees and the left hip to twenty degrees with 1+ pain in the left groin and hip, and limitation of range of motion of the right knee to 138 degrees and the left knee to 132 degrees. (R. at 188-89.)

Dr. Elmes noted that Anderson walked with a slight limp, favoring the left leg. (R. at 188.) According to Dr. Elmes, Anderson claims that about ten of every thirty days are "painful days." (R. at 190.) On his painful days, Anderson rates his pain as nine on a scale of one to ten (ten being the worst), (R. at 187), and claims that he "[m]ust periodically alternate sitting and standing to relieve pain or discomfort . . ." and can walk "less than 2 hours in an 8-hour work-day." (R. at 190.) Anderson complained of pain when Dr. Elmes had him perform toe-standing, heel-standing, walking, and one-half squats. (R. at 188.) Maximum forward flexion of the back also produced left thigh pain and Anderson's scar on the medial aspect of his left thigh was tender. (R. at 189.) Dr. Elmes reported that Anderson's pain had been getting worse over the previous six months. (R. at 187.) Dr. Elmes also noted that Anderson takes Motrin every four to six hours, as well as Tylenol, to relieve his pain. (Id.) Anderson's medications apparently work to alleviate his pain for about one or two hours. (Id.) According to the report, Anderson finds that elevating his leg also helps to reduce his pain. (Id.)

Dr. Elmes' clinical impressions were as follows: history of femur fracture with internal fixation in place but no X-ray confirmation that fracture is completely healed; nonspecific left hip

and thigh pain; quadriceps atrophy in left leg; history of depressive disorder and asthma (as child); migraine headaches; and non-specific stomach pain. (R. at 189.)

Dr. Elmes' Residual Functional Capacity ("RFC")[2] evaluation cites external and postural limitations and suggests that, at least on his painful days, Anderson may not be capable of sedentary work. (R. at 190.) Specifically, Dr. Elmes placed limitations on Anderson's ability to lift and carry, stand and walk, push and pull, sit, climb, balance, kneel, crouch, crawl, stoop, and tolerate extreme temperatures, vibrations, humidity, and hazards such as machinery and heights. (R. at 190-91.) Dr. Elmes indicated that his conclusions are supported by dictation taken during the exam. (R. at 191.)

### G. ALJ's Findings

After receiving Dr. Elmes' orthopedic evaluation, the ALJ gave Anderson's attorney the opportunity to submit a response or request a supplemental hearing. (R. at 72.) Anderson's attorney did not object to the admission of Dr. Elmes' evaluation, nor did he submit new supplemental materials into the record or request a supplemental hearing. (R. at 74.) Based on the evidence in the record and the Commissioner's Rules and Regulations, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

---

[2] The RFC is an assessment based upon all of the relevant evidence of what the claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a).

2. The claimant has not engaged in substantial gainful activity at any time since the alleged onset date of September 11, 2001.

3. The claimant has established the existence of at least one, medically determinable, severe impairment.

4. The claimant's impairment does not meet or equal any in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations of symptoms have been considered in the assessment of his residual functional capacity, but are found credible only to the extent that they limit him to sedentary work.

6. The claimant was not precluded, for any continuous period of 12 months or more, from engaging in sedentary work.

7. The claimant is unable to perform his past relevant work.

8. The claimant is a younger individual.

9. The claimant has a limited education.

10. In view of his younger age, the issue of transferability to work skills is not material.

11. Considering his age, education, and residual functional capacity, medical-vocational Rules 201.24, 201.25 and 201.26, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, would direct similar conclusions of "not disabled," regardless of whether his past work was unskilled, semi-skilled . . . or whether he has any transferable work skills.

12. The claimant was not "disabled," within the meaning of the Act, for any consecutive period of 12 months or more, at any time through the date of this decision.

(R. at 21-22.) The ALJ then concluded that, "based on the applications filed on September 28, 2001, the claimant is not entitled to a period of disability, Disability Insurance Benefits, and not eligible for Supplemental Security Income payments under Sections 216(i), 223, 1602, and 1614(a)(3)(A) respectively, of the Social Security Act." (R. at 22.)

## II. Discussion

Anderson applied for DIB and SSI benefits under Sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. In order to receive disability benefits, Anderson must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The statutes further define "inability to engage in any substantial gainful activity" as not only unable to do his previous work but unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The determination of disability involves a five-step process that considers both medical and vocational factors. The five steps are:

Step 1: Is the claimant engaged in substantial gainful work activity? If yes, the claimant is not disabled. If no, the inquiry proceeds to step two.

Step 2: Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least twelve months? If no, the claimant is not disabled. If yes, the inquiry proceeds to step three.

Step 3: Does the claimant's severe impairment meet or equal the severity of an impairment listed in the appendix of 20 C.F.R. § 404, Subpt. P, App. 1? If yes, the claimant is disabled. If no, the inquiry proceeds to step four.

Step 4: Can the claimant still perform past relevant work? If yes, the claimant is not disabled. If no, the inquiry proceeds to step five.

Step 5: Can the claimant make an adjustment and perform other work? If yes, the claimant is not disabled. If no, the claimant will be found disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v). *See also Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994). At the fourth and fifth steps of the five-step inquiry, the ALJ must consider Anderson's RFC. Anderson's RFC is an assessment of what work-related activities he can still perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The RFC must be based on all the relevant evidence in the record. 20 C.F.R. § 404.1545(a).

Anderson bears the burden of proof through step four of the five-step inquiry; the burden shifts to the Commissioner at step five. *Herron*, 19 F.3d at 333 n.8. Anderson's burden of proof includes providing medical evidence substantiating the assertion of disability. 20 C.F.R. § 404.1512(a). *See also Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). The ALJ weighs the medical and testimonial evidence presented and, when denying benefits, must build an accurate and logical bridge from the evidence to his conclusion. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

Section 205(g) of the Social Security Act grants federal courts the authority to review final decisions of the Commissioner with the power to affirm, modify, or reverse, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 405(g). The scope of this review is limited. This Court may not reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute our own judgment for that of the Commissioner. *Young*, 362 F.3d at 1001. Rather, this Court will affirm the ALJ's decision if it is supported by substantial evidence. *Id.* Evidence is considered substantial if a reasonable person would accept it as adequate to support the ALJ's conclusion. *Id.* Thus, if reasonable minds could disagree on whether

Anderson is disabled, we must affirm the ALJ's decision denying benefits. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

### A. Benefits Denied at Step Five

In this case, the ALJ denied Anderson's claim at step five. (R. at 21.) At step five, the burden is on the ALJ to provide evidence that shows the existence of other work that Anderson can do consistent with his RFC and vocational profile. *Herron*, 19 F.3d at 333 n.8. Relying on the record, the ALJ determined that Anderson had the RFC to perform sedentary work. (R. at 21.) To perform the full range of sedentary work Anderson must be able to lift up to ten pounds at a time and walk or stand for about two hours in an eight-hour day. Social Security Ruling ("SSR") 96-9p.[3] The ALJ utilized the Medical Vocational Guidelines, 20 C.F.R. § 404, Subpt. P, App. 2, Rule 204.00, to conclude that Anderson could perform a significant number of jobs in the national economy despite his nonexertional limitations. (R. at 21.) Anderson challenges the ALJ's conclusion, arguing that the ALJ failed to develop a full and fair record, erred by not deferring to Dr. Elmes' medical conclusions (including that Anderson has a RFC for less than sedentary work on his painful days), and improperly assessed Anderson's pain.

### B. Full and Fair Record

The ALJ postponed Anderson's hearing in order to obtain an orthopedic evaluation from Dr. Elmes and then issued his decision. Anderson argues that the ALJ's decision not to

---

[3] Social Security Rulings do not have the force of law but are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). *See also Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

reconvene and continue his hearing resulted in an incomplete record. In particular, Anderson claims that he never had the opportunity to describe the intensity and persistence of his pain and the functional limitations that result, and that medical experts and vocational experts were denied the opportunity to offer potentially significant testimony regarding Dr. Elmes' evaluation and Anderson's undelivered testimony. (Pl.'s Br. at 13.) In short, Anderson asserts that, due to the ALJ's premature decision, the ALJ never fully considered all the possible evidence. (Id.) The Commissioner rejects these arguments, claiming that Anderson had the opportunity to request a supplemental hearing but decided not to act, thereby waiving the possibility for further proceedings.

The ALJ has a duty to develop an administrative record that contains a full and fair hearing of Anderson's claim for disability. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Smith v. Sec'y of Health, Educ. and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978). In this case, the ALJ clearly stated that he was postponing Anderson's hearing in order to collect more evidence. (R. at 37.) The ALJ made the decision to postpone the hearing after Anderson's attorney and the medical expert recommended a postponement due to the lack of medical evidence in the record. (R. at 35.) The decision to postpone made sense, as the ALJ obtained little evidence in Anderson's brief, partial hearing. At the hearing, Anderson offered a short opening statement, minimal testimony about his daily activities and work experience, and answered a few questions about his pain. Significantly, Anderson's attorney never asked Anderson any questions. Furthermore, the medical expert noted the lack of current medical reports, X-rays, examinations, and information on when Anderson became full or heavy weight bearing, and agreed that more examinations needed to be conducted before he could testify confidently regarding Anderson's

disability status. (R. at 34-35.) Similarly, the vocational expert could not offer any testimony regarding Anderson's current or future ability to find employment.

Dr. Elmes' examination created additional evidence relevant to Anderson's ability to perform work. Had the ALJ reconvened Anderson's hearing, any questions or observations regarding Dr. Elmes' evaluation could have been fleshed out, the medical and vocational experts may have rendered meaningful opinions, and Anderson's complaints of pain and physical limitations could have been more thoroughly assessed. Given the brevity of the original hearing,[4] the lack of opportunity to discuss and assess Dr. Elmes' report, and Anderson's attorney's inability to participate in the questioning at all, the Court finds that the ALJ should have, in accordance with his statements and representations to the parties, reconvened the hearing after the submission of Dr. Elmes' medical report.

Anderson did not waive his right to a full and fair hearing by not petitioning the ALJ for a supplemental hearing. The ALJ disclosed Dr. Elmes' report to Anderson and then gave Anderson an opportunity to supplement the record or petition for a supplemental hearing. (R. at 72-73.) Anderson declined the ALJ's offer to supplement the report, as he believed that Dr. Elmes' report further supported his claims for disability. In declining to petition for a supplemental hearing, however, Anderson did not waive his original right to a full and fair hearing. A supplemental hearing presupposes that a full hearing has been held. In this case, a full hearing never took place, as the ALJ explicitly "postponed" the hearing in order to collect more information. Anderson was led to believe that his hearing would be reconvened and the Court will not infer a

---

[4] The transcript of Anderson's hearing is only thirteen pages long, including two pages of introductions.

waiver of Anderson's right to a full and fair hearing absent an explicit statement to that effect. Anderson never made such a statement, so the ALJ must reconvene the hearing and develop a full and fair record.

### C. Pain Assessment and RFC

Anderson claims that the ALJ erred when evaluating the credibility of his complaints of pain and when factoring pain into his RFC assessment. The Commissioner argues that the ALJ considered all of the evidence in the record, properly assessed Anderson's pain, and then properly reached an RFC determination.

#### 1. Pain Assessment

An ALJ must comply with the requirements of SSR 96-7p when assessing the credibility of a claimant's allegation of pain. *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). Under SSR 96-7p, the ALJ must consider: daily activities; the type dosage, effectiveness, and side effects of medication taken by the claimant; treatment other than medication used to alleviate pain; and reasons the claimant may not seek treatment for the pain. SSR 96-7p. An ALJ's credibility determination is entitled to substantial deference and will not be disturbed unless patently wrong because the ALJ is in the best position to observe the witnesses. *Dixon*, 270 F.3d at 1177. However, the ALJ may not simply state that the "individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p. The determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and

to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brindisi*, 315 F.3d at 787 (citing SSR 96-7p).

The Commissioner argues that the ALJ properly assessed the evidence in the record and rejected Anderson's allegations of pain. In his decision, the ALJ found the degree, severity, and pervasiveness of Anderson's complaints of pain "implausible" due to his failure to seek medical intervention, his ability to care for his three children, his ability to walk and shoot baskets, and his generally unpersuasive appearance and demeanor while testifying. (R. at 20.) The ALJ dismissed Dr. Elmes' statement regarding the frequency of Anderson's painful days as unsubstantiated self-reports from Anderson and then concluded that Anderson did not suffer "such frequent bad days that he would be unable to satisfy the ordinary employer's tolerance for absenteeism or tardiness." (Id.) The ALJ also found that there was no evidence that Anderson needed to elevate his leg to prevent pain or swelling. (R. at 20-21.)

The ALJ's failure to develop a full and fair record undermines his assessment of Anderson's pain. The ALJ admits that Anderson could be expected to experience pain and decreased functional abilities due to his fractured left thigh but dismisses Dr. Elmes' statements regarding the frequency of Anderson's painful days as mere self-reports. (R. at 20.) The fact that Anderson reported the frequency of his painful days to Dr. Elmes, however, does not automatically make the allegations suspicious or invalid. *Compare to Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) (ALJ can reasonably consider portion of doctor's report containing claimant's self-reported inability to walk and stand less significant than the doctor's other findings where medical evidence, vocational expert testimony, and claimant's testimony and work history suggest that claimant can perform sedentary work). Furthermore, Dr. Elmes described several

actions that caused Anderson pain during his examination, (R. at 188-89), thereby providing evidence of pain not discussed or evaluated at the hearing. While the ALJ relies on Anderson's lack of medical treatment to attack Anderson's credibility, these attacks draw attention to the general lack of evidence in the record and the ALJ's original decision to obtain a report from Dr. Elmes. Given the various deficiencies in the medical record and the hearing, it appears that additional questioning of Anderson and the medical expert (and possibly other witnesses) may provide insight into the frequency and intensity of Anderson's painful days and may directly affect the ALJ's assessment of Anderson's ability to work.

Finally, the Court rejects the ALJ's reliance on Anderson's demeanor and daily activities to assess his pain. The ALJ found Anderson's appearance and demeanor at the hearing to be unpersuasive, (R. at 20), and the ALJ noted that Anderson "betrayed no evidence of pain or discomfort while testifying . . . ." (Id.) While the ALJ's credibility assessment will not be overturned unless patently wrong, *Diaz*, 55 F.3d at 308, due to the brevity of Anderson's hearing and the fact that Anderson reports having good and bad days, the Court is not convinced of the significance of the ALJ's June 13, 2003 observations. Similarly, while the ALJ was impressed with Anderson's ability to walk, care for his children, and shoot baskets, Anderson actually provided very little testimony regarding his activities of daily living. As Anderson's attorney may yet choose to question Anderson, and those questions may explore Anderson's daily activities, the Court finds the ALJ's evaluation of those activities to be premature.

2. RFC Assessment

Anderson argues that the ALJ also erred in making a RFC determination because he dismissed Dr. Elmes' report without relying on contrary medical evidence or conducting a hearing to discuss the basis for Dr. Elmes' conclusions. Anderson believes that Dr. Elmes' report supports his disability claim because, in his report, Dr. Elmes indicates that Anderson cannot perform sedentary work on his painful days due to his inability to walk for more than two hours. Anderson claims that ten out of every thirty days are painful days. (Pl.'s Br. at 9.)

In making a RFC determination, the ALJ must not play doctor and must minimally articulate reasons for crediting or rejecting evidence of disability. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). The decision must be based on testimony and medical evidence in the record and the ALJ cannot make his own independent medical determination. *Id.* If the ALJ does indeed play doctor, then remand is proper. The ALJ is not required or indeed permitted to accept medical evidence if it is refuted by other evidence, which need not itself be medical in nature. *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995).

The Commissioner argues that the ALJ did not improperly reject Dr. Elmes' findings and did not improperly play doctor. The Commissioner suggests that some of Dr. Elmes' clinical and diagnostic findings "did not support his limitations." (Def.'s Br. at 9.) In particular, the Commissioner points to Anderson's 5/5 strength in the right leg and 4/5 strength in the left leg, minimal (one-half inch) muscle atrophy in the left leg, lack of sensory deficits, normal reflexes, and the fact that Anderson's X-ray did not reveal abnormalities. (R. at 187-89.)

While the Commissioner shows that Dr. Elmes' report was not entirely negative, simply highlighting these findings does not resolve the issue of Anderson's pain or the significance of

Dr. Elmes' report. As discussed above, during the brief hearing, neither the ALJ nor Anderson's attorney questioned Anderson on the frequency or intensity of his painful days, nor adequately explored how his symptoms limit his daily activities. Anderson's lack of testimony simply constitutes an incomplete record and prevents the ALJ from making a proper judgment with respect to Anderson's pain and RFC. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. Thus, while the ALJ was able to find some evidence in the record to support his RFC, Anderson missed out on an opportunity to challenge that evidence or to explore the evidence that supports his claims. It follows that remand is necessary in order to help clarify these issues. As discussed above, until Anderson's record is fully developed, decisions on his pain, his RFC, and his status as disabled or not disabled are premature.

### D.     Anderson's Attorney's Responsibility

As a final note, Anderson's attorney could have secured an additional hearing by accepting the ALJ's July 17, 2003 offer for a supplemental hearing or by raising the postponement issue at that time. Instead of immediately clarifying these issues, Anderson's attorney replied to the ALJ's letter without indicating a desire for further proceedings but confidently stating that "[b]ased upon [Dr. Elmes'] report a fully favorable decision should issue in Mr. Anderson's claim." (R. at 74.) Although the record left a presumption that the hearing would be reconvened by the ALJ, Anderson's attorney could have assured the continuation by requesting a supplemental hearing in his reply. By not doing so, Anderson's attorney left Anderson vulnerable to the possibility that his case for benefits would not reach its strongest posture. *See Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)

(Where an applicant for social securities benefits is represented by counsel, the ALJ may assume that the applicant is making his strongest case for benefits.); *Sec'y of Health, Educ. and Welfare*, 587 F.2d at 860 (discussing significance of legal representation in social security proceedings). Nonetheless, for the reasons mentioned earlier, the Court feels that Anderson should have an opportunity to flesh out his position.

### III. Conclusion

For the reasons set out above, the Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion. Accordingly, Anderson's motion is granted to the extent set out above, and the Commissioner's motion is denied.

**ENTER ORDER:**

Dated: October 11, 2005.

**MARTIN C. ASHMAN**
United States Magistrate Judge

Copies have been mailed to:

| | |
|---|---|
| BARRY A. SCHULTZ, Esq. | DEPAK SATHY, Esq. |
| Law Office of Barry A. Schultz, P.C. | Special Assistant United States Attorney |
| 1609 Sherman Avenue | 200 West Adams Street |
| Suite 205 | Suite 3000 |
| Evanston, IL 60201 | Chicago, IL 60606 |
| | |
| Attorney for Plaintiff | Attorney for Defendant |